UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DAVID ANGOTT TRUST,

    Plaintiff,

v.

GREAT NORTHERN INSURANCE CO.,

    Defendant.
                                      /

Case No. 05-72115

Honorable Nancy G. Edmunds

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [18]**

This case stems from Defendant Great Northern Insurance Company's decision to deny John David Angott's claim for homeowners insurance benefits for water damage to his home. After Defendant denied Mr. Angott's claim for benefits, Mr. Angott passed away, and Plaintiff John David Angott Trust brought this lawsuit in his stead. Defendant seeks summary judgment on the ground that insurance coverage is explicitly excluded by the terms of Mr. Angott's policy. For the reasons discussed below, the Court GRANTS Defendant's Motion for Summary Judgment.

**I.**    **Background**

In the spring of 2004, John David Angott began renovations on his West Bloomfield Township, Michigan, home. The plans called for the removal of an adjacent garage, cellar, and breezeway, the excavation of this area, and the addition of 2500 square feet of living space.

The demolition and excavation began in May of 2004 in the area adjacent to the wall of Mr. Angott's existing home. A door in this wall separated Mr. Angott's finished basement from the excavated area, so that a person exiting the home would step into the hole dug in preparation for the foundation to Mr. Angott's addition.[1]

In the early morning hours of May 22, 2004, a torrential rain fell on Mr. Angott's property. Water filled the excavation, and a cement footing under the doorway became dislodged. Mr. Angott awoke to several inches of water and major damage in his finished basement.

Mr. Angott immediately notified Defendant, with whom he had a homeowners insurance policy, of the damage to his dwelling and possessions. On May 27, Ken Schmitz, a field adjuster for Defendant, interviewed Mr. Angott at his home. Mr. Angott told Mr. Schmitz that the water filled the excavation and then "just overwhelmed the drains I guess." (Br. of Def. Ex. 2 p. 6.)

Defendant hired a forensic engineering firm, which sent Chad Zielinski to investigate the damage on June 7, 2004. Mr. Zielinski's report echoes Mr. Angott's explanation:

> As the situation was reported to me by the insured, on May 22, 2004 after heavy rainstorms, an excavation adjacent to his home filled with water. This caused water to seep into the basement through the adjacent side door, which was directly above the excavation. The insured is constructing an addition onto the home as well as repairing some existing footings, so a large excavation was placed directly adjacent to the east wall of the home. The insured stated that a storm sewer exists in the excavation, [but] became blocked with debris, which allowed the water to back up into the excavation. The insured stated that the water elevation in the basement was approximately 4 to 6 inches.

---

[1] Prior to the excavation, the basement door had led to a garage cellar or a landing area below the ground level.

2

> . . .
>
> The water damage to the subject home is a direct result of improper construction techniques and a lack of proper maintenance. More specifically, the lack of a proper sediment filter on the storm sewer inlet allowed the inlet to become plugged with debris causing the excavation to easily fill with rainwater. A large portion of the front yard slopes towards the home, which forces a significant amount of surface water toward the excavation. The banks of the excavation were higher than the bottom of the service door in the basement. As the excavation filled, the water easily entered the home.
> . . .

(*Id.* at Ex. 4 p. 1-2.)

In a letter dated June 17, 2004, Defendant denied Mr. Angott's claim for insurance benefits. Defendant gave four grounds for the denial of the claim, pointing to the following clauses in Mr. Angott's insurance policy:

> **Discharge, overflow or backup.** We do not cover any loss caused by the . . . overflow or backup from within a plumbing system, sewer or drain when the . . . overflow or backup exits the plumbing system, sewer or drain outside the foundation of your house or other permanent structure.
>
> . . .
>
> **Surface water.** We do not cover any loss caused by: flood [or] surface water . . . . But we do insure ensuing covered loss unless another exclusion applies.
>
> **Ground water.** We do not cover any loss caused by water . . . in the ground, or by its pressure, leakage, or seepage. But we do insure ensuing covered loss unless another exclusion applies.
>
> . . .
>
> **Faulty planning, construction or maintenance.** We do not cover any loss caused by the faulty acts, errors or omissions of you or any other person in planning, construction or maintenance. . . . But we do insure ensuing covered loss unless another exclusion applies. . . .

(*Id.* at Ex. 1 p. B8-B9.)

3

Mr. Angott retained an independent insurance adjuster, Globe Midwest ("Globe"), to prepare its own analysis of the loss. Globe took issue with some of the facts as determined by Defendant,[2] and offered a competing interpretation of the terms of the insurance policy. Globe concluded that Defendant's denial of Mr. Angott's claim was improper, and asked Defendant to reconsider its position. (*Id.* at Ex. 6.)

On April 14, 2005, Chad Zielinski issued a second report, in which he reaffirmed his earlier opinion:

> There was a pipe at the bottom of the excavation to allow any water entering the excavation to drain [out]. Due to debris clogging the inlet of the pipe, water started to accumulate in the excavation. The contractor is responsible to maintain and protect the inlet of the pipe to allow water to drain from the excavation. . . . The lack of proper maintenance of the inlet is the primary reason for water accumulating in the excavation.

(*Id.* at Ex. 7 p. 1-2.)

On May 9, 2005, Defendant wrote Globe to reiterate its June 17, 2004 decision to deny Mr. Angott's claim for coverage. On May 10, 2005, John David Angott passed away. Mr. Angott's Trust brought this lawsuit shortly thereafter.

---

[2]The "Facts" section of Globe's letter to Defendant states, "Although Mr. Angott initially advised you that a drain line in this excavation became plugged, that information is inaccurate. No drain system had been installed in the excavation that existed on the date of loss. . . . Confirmation of this information can be readily obtained from Mr. Angott's contractor, and we can provide you with an affidavit if necessary." (*Id.* at Ex. 6 p. 1-2.) Globe's apparent theory was that the storm sewer was installed *after* the storm, and that the water simply pooled in the excavation, reached the height of Mr. Angott's basement, and overwhelmed the sump pump. There is no evidence, however--either attached to Globe's letter or anywhere in the record now before the Court--to support this theory. Moreover, Mr. Angott himself stated that the water filling the excavation "just overwhelmed the drains I guess," and that when the water existed the house, it went "to the drain system." (Br. of Def. Ex. 2 p. 6.)

4

**II.     Standard of Review**

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the Court must "construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Id.* The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

**III.   Discussion**

As stated above, Defendant's decision to deny Mr. Angott's claim for coverage was based on four provisions in the insurance policy.[3] Because this case can be resolved solely on the basis of the "surface water" exclusion, the Court needs not address the remaining issues.

The uncontested facts establish that surface water from a rain storm flowed into an excavation adjacent to Mr. Angott's home. From there, the water entered the home through a doorway, flooding the finished basement and causing extensive damage.

The insurance policy excluded "any loss caused by: flood [or] surface water . . . ." (Br. of Def. Ex. 1 p. B9.) The policy does not define "surface water," but Michigan courts typically apply the following definition:

> [S]urface waters are commonly understood to be waters on the surface of the ground, usually created by rain or snow, which are of a casual or vagrant character, following no definite course and having no substantial or permanent existence. Such waters are lost by percolation, evaporation or by reaching some definite water-course or substantial body of water in which they are accustomed to, and so, flow with other waters.

*Fenmode, Inc. v. Aetna Casualty & Surety Co.*, 6 N.W.2d 479, 481 (Mich. 1942).

The parties agree that the water meandering down Mr. Angott's property was surface water. Plaintiff argues, however, that when the water made its way into the excavation, its legal status changed. Plaintiff relies on a recent Georgia Court of Appeals case in which surface water accumulated in an excavation pit before traveling through an uncovered pipe into the plaintiff's office. The court held,

---

[3]Defendant argues in its briefs that the Plaintiff Trust does not have standing to bring this lawsuit on behalf of Mr. Angott. At oral argument, Defendant abandoned its standing argument.

> The water in this case lost its character as "surface water" under the well-recognized definition of that term. Water that gathers into a 13-foot-deep pit and flows into a structure through the length of an underground pipe is no longer diffused, is no longer on the surface of the ground, has gathered into a body, and has followed a defined course through the pipe and into the building.

*Selective Way Ins. Co. v. Litig. Tech., Inc.*, 606 S.E.2d 68, 71 (Ga. Ct. App. 2004).

While *Selective Way* presents an interesting resolution to this issue, it does not support Plaintiff's position here. Georgia's definition of surface water includes only water that "is diffused over the surface of the ground, while it remains in such diffused state . . . ." *Id.* at 70. The definition widely accepted by Michigan courts, however, contains no such restriction. In Michigan, surface water is simply "of a casual or vagrant character, following no definite course and having no substantial or permanent existence." Surface waters are lost only by "percolation, evaporation or by reaching some definite water-course or substantial body of water in which they are accustomed to, and so, flow with other waters." *Fenmode*, 6 N.W.2d at 481.[4]

It would be unhelpful to draw a metaphysical distinction between a gallon of surface water resting for a minute in a puddle and one hundred gallons of surface water resting for an hour in an excavation. Both are vagabonds in search of lower ground, and until they percolate, evaporate, or reach a natural body of water, they remain "surface water" under Michigan law.

---

[4] This is not to say that *Selective Way* was correctly decided, even under Georgia's definition of surface water. The Georgia definition states that surface water "is lost by evaporation, percolation, or natural drainage," 606 S.E.2d at 70, none of which appear to have occurred in that case.

The water that settled briefly into Mr. Angott's excavation, while perhaps not "diffuse" over a large area, was "of a casual or vagrant character," had no "substantial or permanent existence," and had not percolated, evaporated, or reached a definite water course or substantial body of water in which it was accustomed to flow. Even as the water found its way into Mr. Angott's finished basement, it was "surface water," and therefore excluded under Mr. Angott's homeowners insurance policy.[5]

## IV. Conclusion

Being fully advised in the premises, having read the pleadings, and for the reasons set forth above and on the record, the Court hereby GRANTS Defendant's Motion for Summary Judgment.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: May 15, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 15, 2006, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager

---

[5]The exclusion clause at issue contains an "ensuing loss" provision, which provides, "But we do insure ensuing covered loss unless another exclusion applies." (Br. of Def. Ex. 1 p. B9.) Plaintiff argues that this provision provides coverage even if the Court holds that the surface water exclusion applies, "because damage from 'ponded water' is not excluded by the policy, and constitutes an 'ensuing covered loss.'" (Br. of Pl. At 17.) Whether the water was "ponded water," as Plaintiff calls it, is irrelevant, so long as it was "surface water." Defendant accurately describes an example of "ensuing loss" as a loss with a separate proximate cause, such as where water enters the basement, causes a short in the electrical system, which in turn ignites a fire. The fire damage would be covered under the ensuing loss provision. In this case, the proximate cause of the damage to Mr. Angott's home was surface water--exactly the harm envisioned by the exclusion at issue here.

8